UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

CHAZ PINKSTON                                                                                    PLAINTIFF

V.                                                           CIVIL ACTION NO. 3:21-CV-301-KHJ-MTP

VITAL CORE HEALTH STRATEGIES, et al.                                    DEFENDANTS

ORDER

Before the Court is the [76] Report and Recommendation ("Report") of United States Magistrate Judge Michael T. Parker and Defendants' [81] Motion to Strike. For the following reasons, the Court denies the motion to strike, adopts the Report, and dismisses this case with prejudice.

I.      Facts and Procedural History[1]

Plaintiff Chaz Pinkston is an inmate incarcerated at East Mississippi Correctional Facility ("EMCF"). On April 30, 2021, Pinkston filed his [1] Complaint pursuant to 42 U.S.C. § 1983, alleging several violations of his constitutional rights and "HIPPA [sic] Rights." Compl. [1] at 3. After conducting an omnibus hearing, the Magistrate Judge severed Pinkston's claims into two separate civil actions. *See*

---

[1] These facts come from Pinkston's [1] Complaint and his testimony from his *Spears* hearing. *See Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985). A transcript from the hearing is an exhibit to Defendant Brodell's [63] Motion for Summary Judgment. *See* [63-1].

Order [48]. This case contains Pinkston's claims against Defendants Dr. Robert Brodell, Dr. Patrick Arnold, and Vital Core Health Strategies ("Vital Core"). *See id.*

Pinkston's claims arise from medical treatment he received while incarcerated at EMCF. Pinkston first claims that Dr. Arnold—the medical director at EMCF—violated his constitutional rights by denying him adequate medical care. *Spears* Hr'g Tr. [63-1] at 17–21; Pl.'s Objs. R. & R. [79] at 7–9. Pinkston suffers from multiple skin conditions, including eczema and warts. [1] at 10 ¶ 1; [63-1] at 16. He received treatment for his condition from Dr. Brodell, a dermatologist at the University of Mississippi Medical Center ("UMMC"). [63-1] at 9–11. At his appointment, Pinkston alleges Dr. Brodell recommended he use Dupixent, scrub brushes, luffas, razors, and certain creams and deodorants to treat his skin conditions. *Id.* at 16. But according to Pinkston, Dr. Arnold did not give him those items. *Id.* at 16, 18. Instead, Pinkston alleges that Dr. Arnold contacted Dr. Brodell, and they agreed to change his treatment plan to exclude them. *Id.* at 16, 20–21. Pinkston admits he received Dr. Brodell's original recommended treatments after filing this civil action. *Id.* at 19–20.

Pinkston next claims that Dr. Brodell, Dr. Arnold, and Vital Core violated his constitutional rights and the Health Insurance Portability and Accountability Act ("HIPAA") by refusing to provide his medical records. [63-1] at 9–17; [79] at 9–11. He alleges that he asked Dr. Brodell for his records after his appointment, but Dr. Brodell refused "solely because [Pinkston] was a prisoner." [63-1] at 10. Instead, Dr. Brodell sent his records to Dr. Arnold via a correctional officer. *Id.* at 14. But when

2

Pinkston requested his medical records from Dr. Arnold and Vital Core—the medical contractor at EMCF— they also refused to provide them. *Id.* at 15, 21–22. He then requested his medical records from UMMC, who provided them. *Id.* at 11–12.

Finally, Pinkston claims that Dr. Arnold violated his constitutional rights and HIPAA by disclosing his medical records to other prison officials. *Id.* at 23–24. He alleges that he saw Dr. Arnold give his medical records to "a captain," two wardens, and the officers that transported him to his doctor's appointment. *Id.* at 23.

On July 27, 2022, Dr. Brodell moved for summary judgment [63], and two days later, Dr. Arnold and Vital Core did too [65]. They argued that Pinkston's claims should be dismissed for four reasons: (1) HIPAA does not provide a private cause of action; (2) Pinkston failed to state a claim for violation of his constitutional rights; (3) Pinkston failed to exhaust his administrative remedies; and (4) they are entitled to qualified immunity. Mem. Supp. Def. Brodell's Mot. Summ. J. [64] at 4–7; Mem. Supp. Defs. Arnold & Vital Corp.'s Mot. Summ. J [66] at 3–10.  On October 18, Pinkston responded to their motions. Mem. Supp. Pl.'s Resp. Defs.' Mots. Summ. J. [74].

On November 14, the Magistrate Judge recommended that the Defendants' summary judgment motions be granted and the claims against them be dismissed with prejudice. R. & R. [76] at 9–10. Pinkston's objections were due by November

30.[2] [76] at 10. Pinkston did not file his objections until December 20. In response, Defendants moved to strike Pinkston's objections as untimely. Mot. Strike [81].

II. Standard

The Court reviews de novo the portions of the Magistrate Judge's Report to which Pinkston objects, 28 U.S.C. § 636(b)(1). The remaining portions are subject to the "clearly erroneous, abuse of discretion[,] and contrary to law" standards of review. *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989). The Court, however, is not "required to reiterate the findings and conclusions of the magistrate judge." *Koetting v. Thompson*, 995 F.2d 37, 40 (5th Cir. 1993) (citing *Nettles v. Wainwright*, 677 F.2d 404, 406–07 (5th Cir. Unit B 1982)).

III. Analysis

Before considering Pinkston's objections, the Court must first address Defendants' Motion to Strike.

A. Motion to Strike

Defendants argue that Pinkston misrepresented that his objections were timely under the "mailbox" rule and that his action should be dismissed with prejudice "as a sanction for Pinkston's deliberate and perjurious misrepresentation." Mem. Supp. Mot. Strike [82] at 3–5. Pinkston contests these allegations and

---

[2] The Magistrate Judge originally stated that Pinkston's objections were due by November 28. *See* ECF 76. That said, the parties agree that his objections were due by November 30. *See* [82] at 1. This is likely because Pinkston was not served a copy of the Report until November 16, and under the Rules of this Court, Pinkston had fourteen days from the date of service to file his objections. *See* [76] at 10.

4

submits that "[he] did mail out his objections" by the November 30th deadline. Pl.'s Resp. Defs.' Mot. Strike [89].

"Under the prison mailbox rule, a prisoner's pleading is deemed to have been filed on the date that the *pro se* prisoner submits the pleading to prison authorities for mailing." *Stoot v. Cain*, 570 F.3d 669, 671 (5th Cir. 2009). That rule results from the "unique" situation of a *pro se* prisoner. *See id.* at 671–72 (citing *Houston v Lack*, 487 U.S. 266, 270–71 (1988)). "Unlike other litigants, 'the *pro se* prisoner has no choice but to entrust the forwarding of his [documents] to prison authorities whom he cannot control or supervise." *Id.* (quoting *Houston*, 487 U.S. at 271).

Defendants assert that Pinkston's objections were untimely because they were not mailed until December 15. [82] at 2. Defendants provide a declaration from Casey Newell—an employee of Management and Training Corporation working with the Inmate Legal Assistance Program ("ILAP") at EMCF—to support their motion. Decl. Casey Newell [81-1] ¶ 1. According to Newell, "*typically* items are mailed out on the date the prisoner delivers them to ILAP for mailing." [82] at 2–3 (emphasis added). Thus, Defendants allege that "if Pinkston delivered the Objection to ILAP on November 30 [as] he represented, it *likely* would have been mailed to the Court on that date." *Id.* at 3 (emphasis added).

Defendants' arguments fail for two reasons. First, what "typically" happens or what is "likely" to happen is not always what *actually* happens. Second, Newell admits that she notarized an affidavit completed by Pinkston on November 30, stating that he was "mailing out all of [his] objections to the court's Report and

5

Recommendation's that were deadlined [sic] to be submitted today." [81-1] at 1, 3. Newell and Defendants contend that, despite the signed affidavit, the ILAP records indicate that "Pinkston did not deliver the Objection to ILAP for mailing on November 30 . . . ." *Id.* ¶ 3. But given Pinkston's claim to the contrary and the signed affidavit, the Court cannot merely accept Defendants' allegations as true. Indeed, based on the disputed facts, it is just as likely that Pinkston timely submitted his objections as it is that he did not.

Because there is a genuine dispute about whether Pinkston timely filed his objections and because it is better for a case to be decided on its merits than dismissed on a procedural issue, *cf. Rogers v. Hartford Life and Acc. Ins. Co.*, 167 F.3d 933, 936 (5th Cir. 1999) (noting the Fifth Circuit's policy of "resolving cases on their merits and against the use of default judgments"), the Court denies Defendants' [81] Motion to Strike[3] and reviews the portions of the Magistrate Judge's Report to which Pinkston objects de novo.

B.  Pinkston's Objections

    i.    Objection 1

Pinkston first objects to the Magistrate Judge "not allow[ing] [him] to receive any of the discovery that he has adamantly requested . . . ." [79] at 1. He argues that "[a] court should not grant summary judgment against a party who has not had an opportunity to pursue discovery or whose discovery requests have not been

---

[3] Because the Court denied Defendants' [81] Motion to Strike, Plaintiff's [86] and [87] Motions for Leave to File a Response to Defendants' Motion to Strike are now moot.

answered." *Id.* (citing *Nauman v. Bugado*, 374 F. Supp. 2d 893, 900–01 (D. Haw. 2005).

Pinkston's assertion that the Magistrate Judge did not allow him to receive any discovery is false. In its [48] Omnibus Order entered after Pinkston's *Spears* hearing, the Magistrate Judge ordered Defendants to produce Pinkston's medical records, any correspondence about Plaintiff's claims, and Pinkston's prison file, among other things. [48] at 4. Pinkston later filed several motions seeking more discovery from Defendants. *See* ECF [49], [50], [61]. After a review of Pinkston's additional request, the Magistrate Judge determined that the requests were "onerous, compound, cumulative, and unreasonable" and "[sought] information that [was] irrelevant to the claims remaining in this action." Order [51] at 2; [62] at 2.

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). In deciding what is "proportional" a court considers several things, including "whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* Furthermore, "a court must limit the frequency or extent of discovery . . . if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative . . . or the proposed discovery is outside the scope permitted by Rule 26(b)(1)." *Id.* 26(b)(2)(C).

After reviewing Pinkston's additional discovery requests, the Court agrees with the Magistrate Judge that they were irrelevant and unreasonably cumulative or duplicative. For example, Pinkston propounded irrelevant interrogatories asking

Defendants to "state the duties" of many non-parties; asked irrelevant questions about the general conditions of EMCF; and requested documents that the Magistrate Judge had ordered Defendants to turn over. *See* [49-2]. So Pinkston's additional requests were outside the scope of Rule 26(b)(1), and the Magistrate Judge correctly denied Pinkston's motions. Accordingly, the Court overrules Pinkston's first objection.

      ii.      Objection 2

Pinkston next objects that the Magistrate Judge improperly "weigh[ed] credibility and weigh[ed] the evidence" in granting Defendants' Motions for Summary Judgment. [79] at 2–3. He asserts that the Court disregarded his affidavits and declarations while "draw[ing] all reasonable inferences" in the Defendants' favor. *Id.* at 2–5, 7–8.

After reviewing the record, there is no evidence that the Magistrate Judge "weighed credibility" or "disregarded" Pinkston's affidavits and declarations. Rather, the Magistrate Judge's Report considered all the relevant evidence, and after "viewing the facts and the inferences . . . in the light most favorable" to Pinkston, *see* [76] at 3, determined that Defendants were entitled to judgment as a matter of law. Accordingly, the Court overrules Pinkston's second objection.

      iii.      Objection 3

Pinkston next objects that the Magistrate Judge "wrongfully placed the burden of proof and the burden of pleading responsibility on [him]" on Defendants' argument that he did not exhaust his administrative remedies. [79] at 6. But the

Magistrate Judge did not address whether Pinkston exhausted his administrative remedies, see [76] at 9, and neither does this Court. The Prison Litigation Reform Act's ("PLRA") is not jurisdictional. *Johnson v. Johnson*, 385 F.3d 503, 522 n.1 (5th Cir. 2004). So the Court need not determine whether a plaintiff has exhausted his remedies before proceeding on the merits of the case. *See id.* at 522 (noting that the court "need not struggle" with matters of exhaustion because defendants were entitled to qualified immunity). Accordingly, the Court overrules Pinkston's third objection.

      iv.    Objection 4

Pinkston next objects to the Magistrate Judge's finding that Defendants did not violate the Equal Protection Clause by refusing to provide him a copy of his medical records. [79] at 9–11. He argues he appropriately raised an Equal Protection claim at the Omnibus Hearing, and Defendants did not provide a "compelling government interest" as to why he should not have his records. *Id.* at 9, 11.

First, the Magistrate Judge correctly noted that Pinkston's Equal Protection claim is not properly before the Court. [76] at 8. "A claim which is not raised in the complaint but rather, is raised only in response to a motion for summary judgment is not properly before the court." *Cutrera v. Bd. of Supervisors of LSU*, 429 F.3d 108, 113 (5th Cir. 2005). Pinkston contends that he properly raised the claim at his *Spears* hearing, [79] at 9, but a review of the hearing transcript reveals no such claim.

9

Second, even if Pinkston had properly raised his Equal Protection claim, it would still fail because he has not shown that EMCF's policy was not rationally related to any legitimate governmental objective. Pinkston incorrectly assumes that strict scrutiny would apply to his Equal Protection claim. *See* [79] at 11 (arguing that Defendants failed to provide a "compelling government interest" for not providing his medical records). But "[p]risoners are not a suspect class for purposes of constitutional protection." *Garcia v. Dretke*, 388 F.3d 496, 499 (5th Cir. 2004). Thus, any Equal Protection challenge brought by a prisoner is "subject only to a rational basis standard." *Id.* Under that standard, for the government's action "to be permissible, the disparate treatment must merely further a 'legitimate state interest.'" *Id.* "[T]he burden is not upon the state to establish the rationality of its restriction, but is upon the challenger to show that the restriction is wholly arbitrary." *Kite v. Marshall*, 661 F.2d 1027, 1030 (5th Cir. 1981) (quotation omitted).

Pinkston has not shown that EMCF's policy of not providing inmates with their medical records is "wholly arbitrary" and not rationally related to a legitimate governmental objective. One explanation for EMCF's policy is that it relieves prison officials from the administrative burden of collecting inmates' medical records every time they are requested. This policy thus preserves state resources in an already overburdened prison system. And preservation of state resources is undoubtedly a legitimate state interest. *See Garcia*, 388 F.3d at 499-500. Accordingly, the Court overrules Pinkston's fourth objection.

v.      Objection 5

Pinkston next objects to the Magistrate Judge's finding that he failed to state a claim for Dr. Arnold's disclosure of his medical records to correctional officers. [79] at 12–13. He argues Defendants violated his constitutionally protected "zone of privacy" and the PLRA does not bar his claim even though he did not suffer a physical injury. *Id.*

As to Pinkston's second argument, he is correct. A plaintiff's "failure to allege any physical injury precludes his recovery of any compensatory damages for emotional or mental injures suffered" under the PLRA. *Hutchins v. McDaniels*, 512 F.3d 193, 196 (5th Cir. 2007). But a plaintiff may still recover nominal or punitive damages under the PLRA, even absent a physical injury. *Id.* at 198.

Pinkston's privacy claim still fails, however, because the disclosure of his medical records did not violate his constitutional rights. The "confidentiality branch"[4] of the Fourteenth Amendment protects an "individual['s] interest in avoiding disclosure of personal matters." *Zaffuto v. City of Hammond*, 308 F.3d 485, 489 (5th Cir. 2002) (quoting *Whalen v. Roe*, 429 U.S. 589, 599 (1977)). But "the contours of the confidentiality branch are murky." *Id.* at 490 (quoting *Scheetz v. The Morning Call, Inc.*, 946 F.2d 202, 206 (3d Cir. 1991)). In fact, until *Zaffuto* "[t]here

---

[4] Pinkston's use of the phrase "zone of privacy" and his citation of cases like *Obergefell v. Hodges*, 556 U.S. 14 (2015), relate to the "autonomy branch" of substantive due process privacy rights. *See Zaffuto*, 308 F.3d at 489 n.4 (discussing the difference between the two branches). That branch involves an individual's "interest in independence in making certain kinds of important decisions, such as those relating to marriage, procreation, and education." *Id.* (quotation omitted). But Pinkston's allegations fall within the "confidentiality branch."

11

[was] no Fifth Circuit authority on what types of disclosures are personal enough to trigger the protection of the confidentiality branch." *Id.* The question becomes even less clear when a prisoner's private medical records are involved. *See, e.g.*, *Massey v. Helman*, 196 F.3d 727, 742 n.8 (7th Cir. 1999) ("Whether prisoners have any privacy rights in their prison medical records and treatment appears to be an open question.").

In the Fifth Circuit, "a prisoner has no clearly recognized constitutional right in the privacy of his medical records." *Wells v. Pinion*, No. 07-6844, 2008 WL 2185329, at *6 (E.D. La. May 20, 2008); *Covarrubias v. Foxworth*, No. 6:13-CV-812, 2016 WL 4836864, at *3 (E.D. Tex. Sept. 14, 2016) (citing *Anderson v. Romero*, 72 F.3d 518, 523 (7th Cir. 1995)). That is not to say that "certain disclosures of medical information or records" are not actionable. *Anderson,* 72 F.3d at 523. "But they would be actionable under the cruel and unusual punishments clause of the Eighth Amendment rather than under the due process clause of the Fourteenth." *Id.*

Pinkston does not allege an Eighth Amendment violation. But even if he did, Dr. Arnold's alleged disclosures of Pinkston's medical records does not constitute "cruel and unusual punishment." Pinkston contends that Dr. Arnold revealed his records "five different times," including to a captain, two wardens, and the officer who transported him to see Dr. Brodell. [63-1] at 23. But he does not allege that this was a malicious act intended to humiliate him or otherwise punish him, and there is no evidence that his information was otherwise made public. Thus, Pinkston's allegations do not rise to a showing of cruel and unusual punishment required to

12

state a constitutional claim under the Eighth Amendment. *See Anderson*, 72 F.3d at 523 (giving examples of actions that might violate the Eighth Amendment, including "disseminat[ing] humiliating but penologically irrelevant details of a prisoner's medical history"). Accordingly, the Court overrules Pinkston's fifth objection.

### vi. Objection 6

Pinkston next objects to Defendants' argument that they are entitled to qualified immunity. [79] at 13–15. But the Magistrate Judge did not address whether Defendants were entitled to qualified immunity, *see* [76] at 9, and neither does this Court. "[B]efore reaching the issue of qualified immunity, [a court] must decide whether the plaintiff has stated a claim for violation of a constitutional right." *Sappington v. Bartee*, 195 F.3d 234, 236 (5th Cir. 1999). "Thus, if it becomes evident that the plaintiff has failed to state or otherwise to establish a claim, then the defendant is entitled to dismissal on that basis." *Id.* As discussed above, Pinkston has failed to state a claim for violating a constitutional right or a right otherwise granted by Federal law. Defendants therefore are entitled to dismissal on that basis. Accordingly, the Court overrules Pinkston's sixth objection.

### vii. Objection 7

Pinkston next objects to Defendants' argument that Pinkston failed to exhaust his administrative remedies. [79] at 13–15. But the Magistrate Judge did not address whether Pinkston exhausted his administrative remedies, *see* [76] at 9, and neither does this Court, *see supra* Part III.B.iii.

13

IV.  Conclusion

Along with the Court's stated findings, it also finds that the remaining portions of the Report are not clearly erroneous or contrary to law.

The Court has considered all arguments. Those not addressed would not have changed the outcome. For the stated reasons, the Court:

- DENIES Defendants' [81] Motion to Strike;

- FINDS AS MOOT Plaintiff's [86] and [87] Motions for Leave to File a Response to Defendants' Motion to Strike are now moot;

- ADOPTS the [76] Report and Recommendation of United States Magistrate Judge Michael T. Parker;

- and GRANTS Defendant Dr. Robert Brodell's [63] Motion for Summary Judgment and Defendants Dr. Patrick Arnold's and Vital Core Health Strategies' [65] Motion for Summary Judgment.

Pinkston's claims against Defendants are DISMISSED with prejudice. The Court will issue a separate final judgment consistent with this Order and Federal Rule of Civil Procedure 58.

SO ORDERED, this the 24th day of February, 2023

s/ *Kristi H. Johnson*<br>UNITED STATES DISTRICT JUDGE